**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL KILEY and CRISTINA R. KILEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NRT TITLE AGENCY, LLC,<br><br>Defendant. | Civ. Action No. 09-3549<br><br><br>OPINION |

### I.     Introduction

This matter comes before the Court upon the motion [D.E. 17] brought by defendant NRT Title Agency, LLC ("NRT") to dismiss the second amended complaint filed by plaintiffs Paul Kiley and Cristina R. Kiley ("the Kileys") [D.E. 29] pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  At the heart of this case is the legality of the mortgage recording fees charged by NRT when plaintiffs refinanced their home mortgage.

### II.    Background Information

On November 27, 2006, the Kileys purchased real property located at 413 Washington Street in Westfield, New Jersey.  (Second Am. Compl. ¶ 9.)  In order to finance payment for their property, they obtained a residential real estate loan from Navy Federal Credit Union ('Navy') in the amount of $560,000.00, which was secured by a first mortgage on the property. (*Id.*)

On June 22, 2009, the Kileys refinanced the Navy loan by obtaining another residential real estate loan from Wells Fargo Bank, NA ("Wells Fargo"). (*Id.* ¶ 10.) To do so, the Kileys paid the outstanding balance owed on the Navy loan, whereupon Navy executed a "Mortgage Release Satisfaction and Discharge" ("Mortgage Release"), which released the mortgage lien previously recorded on the property. (*Id.*) The Kileys allege that Navy, acting through a company known as DOCX, LLC, caused the Mortgage Release to be recorded with the Union County Clerk's Office, and that Navy paid the $40 recording fee. (*Id.*)

The Kileys further allege that defendant NRT is a real estate settlement service provider operating out of Millburn, New Jersey, and "[a]t all time relevant hereto, NRT acted as the settlement agent for Plaintiffs' June 2009 mortgage refinance transaction." (*Id.* ¶ 11.) The Kileys aver that, in this capacity, NRT prepared a HUD-1 Settlement Form ("HUD-1"), appended as Exhibit A to the second amended complaint, that provided an itemized listing of the funds to be paid at the closing of their June 2009 refinance transaction. (*Id.* ¶ 15.) Among the items specified in the HUD-1 was a $240 charge on Line 1201 for "Recording fees: new MORTGAGE," which, the Kileys allege, refers to the fee to record the Wells Fargo mortgage placed on the Kileys' property to secure the refinancing loan. (*Id.* ¶ 16; Exh. A.)

According to the Kileys, the Union County Clerk's Office, and other New Jersey public records offices, may charge fees for the recording of new mortgages or the release of prior mortgages under N.J.S.A. 22A:2-29, a statute which limits the fees to the amount set in the fee schedule provided in the statute.[1] (*Id.* ¶ 17.) Plaintiffs allege that these recording fees are

---

[1] The Court notes that the Kileys erroneously refer to 2003 N.J. ALS 117 in the second amended complaint and their brief as the New Jersey statute governing the schedule of recording fees for mortgage documents. The Court cannot ascertain what the Kileys' citation to "2003 N.J. ALS 117" relates to. As such, when referring to the statutory fee schedule cited by the Kileys, the Court will substitute the proper statute, N.J.S.A. 22A:2-29.

charged to the entity who actually records the mortgages and/or releases with the clerks' offices, which, in turn, passes the recording fee along to the borrower to be paid at closing. (*Id.*)

In accordance with the fee schedule, the stamp placed by the Union County Clerk's Office on the certified copy of the 16-page Wells Fargo mortgage document indicates that the fee paid to record it was $180. (*Id.* ¶¶ 18-19; Exh. B at M12724-0841.) The Kileys allege that Line 1201 of the HUD-1 demonstrates that NRT misrepresented that the fee paid to the clerk's office to record the "New Mortgage" document was $240, and thus defrauded them. (*Id.* ¶ 20 (*citing* Exh. A, Line 1201).) The Kileys were charged the full $240 at the refinance closing. (*Id.* ¶ 21.)

The Kileys sued, seeking class certification, "in order to recover the illegally obtained fees that they and their fellow Class members were charged by Defendant." (*Id.* ¶ 23.) The Kileys allege that three days after they filed their initial complaint, on July 20, 2009, NRT wrote them a letter offering an enclosed $20 check as a "'return of the excess funds collected at closing for recording charges.'" (*Id.* ¶ 24.) The Kileys, through counsel, refused the payment. (*Id.* ¶ 24.) On August 17, 2009, NRT wrote another letter to the Kileys, included as Exhibit C to the second amended complaint, in which it claims that the HUD-1's listed recording fee of $240 was proper under the New Jersey Land Title Insurance Rating Bureau's Manual of Rates and Charges ("Manual of Rates"). In the letter, NRT stated that pursuant to the Manual of Rates, the $240 fee "represents the mortgage recording fee of $180, the prescribed $5.00 recording fee, and $55 of the prescribed $75 as related to the discharge of [the Navy] mortgage." NRT further claimed that in reviewing the title policy it discovered that Navy had already recorded the Mortgage Discharge and paid the $40 recording fee, so it was refunding $20 to the Kileys. (*Id.* Exh. C.)

Following a telephone conference with Magistrate Judge Patti Shwartz on August 17, 2009, the Kileys served a subpoena *duces tecum* on Navy to obtain documents in its possession

relevant to the Kileys' refinancing. (*Id.* ¶ 27.) Plaintiffs allege that through this discovery they "confirmed" that Navy instructed its agent DOCX, LLC to record the Navy Mortgage Release and to pay the $40 recording fee to the Union County Clerk's Office. (*Id.* ¶ 28.) The Kileys also allege that NRT, "a single service provider, played absolutely no role whatsoever in this process, but nevertheless illegally charged Plaintiffs $15 for purportedly having performed this task." (*Id.*) According to the Kileys, the $240 charge is comprised of: (1) the $180 fee to record the Wells Fargo mortgage, recorded by NRT and paid to the Union County Clerk's Office; (2) the $40 fee to record the Navy Mortgage Release, recorded by Navy and paid to the Union County Clerk's Office; (3) the allowable $5 surcharge; and (4) the $15 "undivided, unearned fee," which NRT is alleged to have illegally charged. (*See generally id.* ¶¶ 17-19, 28, 39.)

Furthermore, the Kileys allege that NRT "perpetuat[ed] this scheme using a computer program known as 'Easy HUD'" to generate the list of real estate settlement services for which they were charged. (*Id.* ¶¶ 35, 41.) Plaintiffs allege that NRT fraudulently concealed that it was charging them for a service that it never performed by misrepresenting that the entire amount identified on Line 1201 of the HUD-1 was being paid to record the "New Mortgage," i.e., the Wells Fargo mortgage document. (*Id.* ¶ 36.)

Based on the foregoing, the Kileys bring five causes of action: violation of § 8 of the Real Estate Procedures Act, 12 U.S.C. § 2607(b) (Count I); violation of the New Jersey Consumer Fraud Act ("NJ CFA"), N.J.S.A. 56:8-1, *et seq.* (Count II); breach of implied contract (Count III); breach of the duty of good faith and fair dealing (Count IV); and unjust enrichment (Count V). (*See id.* ¶¶ 57-87.) They seek to certify a class of consumers affected by NRT's allegedly illegal acts, to obtain treble damages, attorneys' fees and costs, and to enjoin NRT from continuing the complained of practice. (*See id.*)

### III. Standard of Review

FRCP 12(b)(6) permits courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." When considering the motion, the district court judge is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The standard is "not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 312 (3d Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*).

The pleading standard has been heightened through decisions of the Supreme Court, beginning with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and further refined in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In the latter, the Supreme Court emphasized the distinction between factual contentions and legal conclusions, and cautioned courts from against accepting "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" as sufficient. Interpreting *Iqbal*, in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009), the Third Circuit wrote that the task of the district court is to apply a two-prong test:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

(Citations omitted).

While the refined pleading standard arguably imposes a higher burden upon a plaintiff, a judge nonetheless may not grant a motion "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009). In other words, the plausibility standard remains the litmus test at the motion to dismiss stage.

The Court may consider documents attached to or specially referenced in the second amended complaint, and matters of public record, without converting a motion to dismiss into one for summary judgment. *See Mele v. Federal Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

## IV. Discussion

### 1. Real Estate Procedures Act Claim

NRT argues that the Kileys have failed to plead a viable claim for violation of § 8 of the Real Estate Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), for two reasons: (1) plaintiffs did not plead the essential allegation that NRT split or shared a portion of the charged filing fee with a third party for performing a service (Def.'s Br. 6); and (2) the rate charged by NRT was permissible under the Manual of Rates, which is issued under the authority of the New Jersey legislature. (Def.'s Br. 9.)

Section 8(b) of RESPA provides:

> No person shall give and no person shall accept any portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

In *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d Cir. 2005), the court analyzed the FRCP 12(b)(6) dismissal of a RESPA § 8(b) claim. There, the plaintiff, Santiago,

alleged that he obtained a loan for his home from GMAC Mortgage Group, Inc. ("GMAC"), whereupon GMAC charged and collected from him mortgage settlement services fees including an $85 tax service fee, a $20 flood certification fee, and a $250 funding fee. *Id.* at 386. While GMAC disclosed these charges to Santiago, he alleged that GMAC retained third party vendors to perform the tax and flood certification services, and impermissibly "marked up" the service by charging him more than the services cost GMAC. *Id.* Additionally, Santiago averred that the reasonable value of the funding service was $20, thus GMAC illegally charged him $230 more than that amount for providing the service, i.e., it "overcharged" him. *Id.*

The Third Circuit began its analysis by making clear that Santiago's two substantive allegations, that GMAC "overcharged" and "marked up," are factually different and require separate analyses. *Id.* at 387 n.2. While the court did not specifically define what constitutes an "overcharge," it summarized Santiago's interpretation of RESPA § 8(b) as ascribing illegality when "the settlement service provider charges the consumer a fee, of which only one portion is a fee for the reasonable value of 'services rendered.' The other portion of the fee, the amount in excess of the reasonable value, is essentially a fee for 'no services rendered' that is added to the fee for 'services rendered.'" *Id.* at 387. After reviewing the plain text of the statute, the Third Circuit held that § 8(b) makes no such distinction between "reasonable" and "unreasonable" charges, and as such, § 8(b) does not provide a cause of action for allegations of "overcharges." *Id.* at 387–88.

The court held that § 8(b) does cover "markups," reasoning that a markup has the same net result as a "kickback arrangement," which is specifically prohibited by the statute in § 8(a).

> In a kickback arrangement, the consumer would give the settlement service provider $100 for a service, the mortgage provider would give the third party vendor $100 for that service, and the third party vendor would return $20 to the

7

> settlement service provider as a kickback for the referral of service. In a markup arrangement, the consumer still gives the settlement service provider $100 for a service, but the settlement service provider keeps $20 and gives the third party vendor $80 for the service. In both scenarios, the borrower has been charged $100, the settlement service provider has earned $20 for a service it did not provide, and the third party vendor has earned $80 for a service it did provide.

*Id.*

After concluding that markups are covered by § 8(b), the Third Circuit remanded the matter to the district court to determine whether GMAC rendered services ancillary to those provided by the retained third party vendors, with whom it split Santiago's payment, and whether such services justified the additional charge. *Id.* at 389.

Judge Irenas of this District recently relied on *GMAC* in dismissing the complaint in *Tubbs v. North American Title Agency*, 622 F. Supp. 2d 207 (D.N.J. 2009). The plaintiffs brought a § 8(b) RESPA suit against their closing agent, North American Title Agency, Inc. ("Title Agency"), for allegedly charging them $150 for the "Release Recording Fees," when they refinanced their two existing home mortgages with Wachovia Bank. *Id.* at 208. The plaintiffs' complaint, like the Kileys', specifically alleged that Title Agency performed no services whatsoever and did not actually record the release of the mortgages with the county clerk's office. *Id.* Instead, Wachovia Bank prepared and recorded the necessary documents with the clerk's office and separately charged the plaintiffs the $40 per mortgage recording fees. *Id.* Plaintiffs contended that the $150 "Release Recording Fees" that Title Agency charged them constituted "precisely the type of 'markup' that violates" the statute. *Id.* at 209.

Judge Irenas rejected the argument. Distinguishing *GMAC*, he held that Title Agency "did not actually split a fee for the same service with any third party, but rather the $150 it charged, and the $80 billed by Wachovia was not for the same settlement service." *Id.* at 210. Judge Irenas noted that Wachovia, as the mortgagee, was required by law to record a satisfaction

of mortgage once the mortgage was paid in full, *see* N.J.S.A. 46:18-11.2, and was entitled to pass the county recording fees to the borrower and to charge an additional "service fee" of $25 for its work in preparing and recording the mortgage release. *Id.* He determined that Title Agency's charge for $150 was not a markup of Wachovia's $25 charge for recording the release, but was for its own services of obtaining the payoff statement, collecting money from the appropriate parties to the settlement, making the appropriate distributions to prior mortgagees, and following up to verify that the mortgagee did prepare and record the lease. *Id.* While observing that arguably Title Agency should have reduced its fee to account for the plaintiffs' separate payment to Wachovia for the recording fees, he concluded that such an "overcharge" does not violate RESPA. *Id.*

Here, the services NRT provided closely resemble those in *Tubbs*. The Kileys allege that Navy, the prior lender, recorded the release of its satisfied mortgage and paid for the recording fees, while the documents attached to the complaint demonstrate that, separately, NRT prepared other mortgage documents, assisting the refinancing in other ways. As the Third Circuit explained in *GMAC*, "[i]n a markup arrangement, the consumer still gives the settlement service provider $100 for a service, but the settlement service provider keeps $20 and gives the third party vendor $80 for the service." 417 F.3d at 388–89. In *GMAC*, the settlement agent required the plaintiffs to obtain tax and flood certifications in order to secure the loan, engaged third party vendors to perform the tasks, and then charged the plaintiffs for the vendors' services, keeping the balance for itself. *Id.* at 386. But here, the Kileys do not allege that NRT engaged any third party to work on the recordings—Navy fulfilled its legal obligation as the mortgagee by recording the Mortgage Release and received no compensation for its services from any party. All of the money charged to the Kileys under Line 1201 of the HUD-1 related to covering the

actual costs of the recording fees or was retained by NRT.  As such, its services are similar to those examined, and found to be legal, by Judge Irenas in *Tubbs*.

The Kileys claim that NRT kept the "unearned, undivided" fee of $15, despite "play[ing] absolutely no role whatsoever" in recording the Navy Mortgage Release.  (Second Am. Compl. ¶ 28.)  But they support this claim by artful pleading, employing the passive voice to describe the recording of the Wells Fargo mortgage document, obscuring who performed the service.  In paragraph 18 and 19, respectively, they allege, "Plaintiffs' Wells Fargo Bank, NA mortgage document *which was filed on* June 25, 2009 . . ." and "[T]he *recording fee paid* to record Plaintiffs' Wells Fargo Bank, NA mortgage was $180.00." (Emphasis added).  The Court gleans from the copy of the Wells Fargo mortgage document that NRT effectuated the recording and covered the accompanying fees.  (*See id.* Exh. B.)  In Line 1201 of the HUD-1, NRT lists the cost of "Recording Fees" for the "new MORTGAGE" as $240.  As detailed *infra*, the pleadings clearly contemplated that the costs of both recording fees were included in the figure, and, in fact, the Kileys have tacitly conceded the fact by only alleging that NRT impermissibly kept the "unearned, undivided" fee of $15.  (*See id.* ¶ 28.)  As the settlement agent, NRT performed other services, such as recording the Wells Fargo mortgage, which plaintiffs fail to mention in the pleadings.  Judge Irenas held in *Tubbs* that although the settlement agent did not record a satisfied mortgage on its own, it provided numerous other services.  See 622 F. Supp. 2d at 210.  Similarly, the Court finds that NRT did not illegally markup the cost of any services performed by third parties; instead, NRT, at worst, overcharged the Kileys for its services by lumping the two recording fee costs into one charge, an act that is not covered by the protections § 8(b) of RESPA.  *See GMAC*, 417 F.3d at 387–88.

For their part, the Kileys rely on the Second Circuit decision in *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 125–126 (2d Cir. 2007), which holds that RESPA § 8(b) "prohibit[s] one service provider from charging the consumer a fee for *which no . . . work is done,*" *whether or not it is reflected in a charge divided among multiple parties.* (Emphasis added). The Kileys thus conclude that NRT incorrectly argues that it cannot be held liable for violating § 8 of RESPA because it did not split the $15 fee with another service provider. (Pls.' Br. 10.) In *Cohen*, the plaintiff alleged that when she refinanced her home mortgage, the service provider presented her with a closing statement listing various fees incurred in connection with the transaction, including a $225 "post-closing fee." Her position was that neither the service provider nor any other party performed any service for that fee. *Id.* at 113–14. Relying on this fact, the court ultimately found that because the plaintiff alleged that the service provider did not perform any service whatsoever to earn a "post-closing fee," there was no alleged overcharge, but rather a markup. *Id.* at 125. Here, as detailed above, the exhibits appended to the pleadings indicate that NRT performed work in overseeing the recording of the necessary documents for the "New Mortgage," for which it charged $240 in Line 1201 of the HUD-1. As such, notwithstanding any differences between the Third Circuit and Second Circuit's lines of reasoning, applied to these facts, *Cohen* does not alter this Court's finding that the Kileys' claim is not covered under RESPA § 8(b).

NRT also argues that it was entitled to bill them in excess of the two fees paid to the Union County Clerk's Office pursuant to the aforementioned Manual of Rates.[2] (Certification of

---

[2] This Court will adopt Judge Irenas's reasoning in *Tubbs* when he held that, "because the Manual [of Rates] is publicly available, and prepared in accordance with statute statutes, the Court will consider it without converting Defendants' Motion into one for summary judgment." 622 F. Supp. 2d at 211 n.9.

Louis A. Chiafullo ("Chiafullo Cert."), Exh. A.) The purpose of the Manual of Rates is explained on its first page:

> THIS MANUAL IS THE MANUAL OF RATES AND CHARGES OF THE NEW JERSEY LAND TITLE INSURANCE RATING BUREAU, AN UNICORPORATED ASSOCIATION, OPERATING PURSUANT TO N.J.S.A. 17:46B-46 AS A TITLE INSURACE RATING ORGANIZATION ON BEHALF OF ITS MEMBERS AND SUBSCRIBERS. . . . THE RATES AND CHARGES FOR TITLE INSURANCE CONTAINED HEREIN HAVE BEEN APPROVED BY THE COMMISSIONER OF BANKING AND INSURANCE IN ACCORDANCE WITH THE TITLE INSURANCE ACT OF 1974, N.J.S.A. 17:46B-1 ET SEQ., AS AMENDED.
>
> Section 7.1 of the Manual of Rates covers recording service charges:
>
> 7.1 RECORDING SERVICE CHARGE
>    a. When an insurer or agent undertakes to record instruments in a transaction (other than the discharge or cancellation of mortgages, for which a specific charge is provided for in paragraph b. below), in addition to the applicable recording fees, the insurer or agent may charge an additional service charge of $5.00 for each instrument to be recorded.
>
>    b. *When an insurer or agent is performing closing or settlement services and arranges for the satisfaction of existing mortgages*, the insurer or agent shall charge $75.00 for each mortgage to be satisfied, inclusive of recording fees.

(Chiafullo Cert., Exh. A, at 7-1) (emphasis added.)

Based on the Manual of Rates, NRT would have been permitted to charge the Kileys $35 for the satisfaction of the Navy mortgage, apart from the $40 recording fee. NRT thus contends that it charged less than the amount allowed under the Manual of Rates (Def.'s Br. 11), an argument which the Kileys do not address. While the Kileys allege that "Defendant provided no service whatsoever *in connection with the recording of the release of the mortgage lien* associated with Plaintiffs' prior mortgage" (Second Am. Compl. ¶ 29) (emphasis added), they do *not* allege that NRT played no role in arranging for the satisfaction of the Navy mortgage. The Court once again notes that a settlement agent's role is not limited to just the recording of the

satisfied mortgage.  *See Tubbs*, 622 F. Supp. 2d at 210.  Although the Kileys allege that NRT did not *record* the Mortgage Release, such a pleading does not render § 7.1 of the Manual of Rates inapposite.  Accordingly, because the fees charged by NRT comport with Third Circuit and New Jersey statutory law, the Kileys have failed to plead a cognizable § 8(b) RESPA claim and Count I is dismissed for failure to state a claim.

2. **State Law Claims**

The Court has dismissed the federal claim and will not exercise pendent jurisdiction over the claims for violation of the NJ CFA, breach of implied contract, breach of the duty of good faith and fair dealing, and unjust enrichment.  *See* 28 U.S.C. § 1367(c).

V. **Conclusion**

For the foregoing reasons, NRT's motion to dismiss is granted as to the Kileys' federal claim, and the second amended complaint will be dismissed.  An appropriate order will be entered.

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

Dated:  June 16, 2010